# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.  Case No. 8:15-CR-483-T-36TBM

**ALFREDO ORTIZ-RODRIGUEZ**
_____/

## SENTENCING MEMORANDUM

**COMES NOW**, the Defendant, Mr. Alfredo Ortiz-Rodriguez, by and through undersigned counsel, and files this sentencing memorandum in support of a reasonable sentence. As grounds in support thereof, Mr. Ortiz-Rodriguez shows as follows:

Mr. Ortiz-Rodriguez, soon to be 31, was born and raised in a remote fishing village near the coast of Ecuador. He and his siblings were raised in severe poverty; and often lacked adequate food and proper clothing. His father, a shrimp fisherman, was unable to support the family and abandoned them when Mr. Ortiz-Rodriguez was very young. As sole provider, his mother attempted to earn a living by washing laundry and having a fruit stand, but was never able to provide sufficient food for the family. *See* PSR ¶¶34-40.[1]

---

[1] In addition to facts outlined in the PSR, this memorandum includes information provided by Mr. Ortiz-Rodriguez in conversations with counsel.

Due to the family's financial need, Mr. Ortiz-Rodriguez and his siblings became the sole source of financial support for the family. This financial responsibility forced him out of school by the 6th grade.

At age 14, he began working as a hired fisherman, helping on small, open coastal boats in search of sharks and other sea creatures that could be sold locally. The presence of Pirates caused him to also seek employment in construction related fields, which did not pay as well as fishing. (PSR ¶52).

Mr. Ortiz-Rodriguez has been in a common law union with Caterine Estefania for the last 5 years. He has one child with her, as well as a son from a previous relationship. Mr. Ortiz-Rodriguez is the sole support for both children. He also is the main source of support for his mother who watches his son. (PSR ¶¶41-42).

The social climate in Ecuador has rapidly devolved into chaos. Drug gangs, who act with impunity, now essentially rule much of Mr. Ortiz-Rodriguez's homeland. *See* attachment A. Ecuador has not always been in this condition, and the rule of law has only recently broken down. Lacking funds to move from Ecuador, he found himself raising children in a place where human life or suffering means little. Mr. Ortiz-Rodriguez felt unable to support his family of five.

While traditionally, boat mules are brought up through the ranks of criminal organizations, they are now often recruits. This is the instant case. Mr. Ortiz-

Rodriguez was hired along with his co-defendants to move kilograms of cocaine. Factually, Mr. Ortiz-Rodriguez was paid by others in the conspiracy. Mr. Ortiz-Rodriguez had no equity interest in the drugs. He had no role in planning the criminal scheme and absolutely no role in the ultimate distribution of the cocaine. He did not recruit any other participants; he had little knowledge of the scope of the broader conspiracy. Distinctly, no one reported to him. He was less culpable than the logistics people, the distributors, the purchaser of the cocaine, the seller of the cocaine, or any other unindicted co-conspirators. He was essentially a laborer on the boat.

Mr. Ortiz-Rodriguez was not a member of any drug trafficking organization or a regular participant in drug trafficking. He fears the "bacrim" organizations that rule Ecuador. When approached on the street, he knew that it was "foolish" to go on the proposed voyage. As a day-laboring fisherman with a family and sick mother to care for, in a country lacking health care and other basic services for the poor, he risked everything for what most Americans would consider a small sum.

**Request for a mitigating role adjustment pursuant U.S.S.G. §3B1.2**

In the PSR, the United States Probation Officer fails to identify any factors warranting a departure from the guidelines. PSR ¶19. Mr. Ortiz-Rodriguez, however, submits that he is eligible for a 2-level mitigating role adjustment, pursuant to U.S.S.G. §3B1.2, which provides:

> Based on the defendant's role in the offense, decrease the offense level as follows: (a) If the defendant was a minimal participant in any criminal activity decrease by 4 levels. (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels.

As one of three persons found on a vessel transporting illegal drugs, Mr. Ortiz-Rodriguez does not represent his participation as minimal. He does, however, believe that his participation qualifies as minor, i.e., characteristic of a defendant "who is less culpable than most other participants in the criminal activity." §3B1.2 App. N. 5. He respectfully points out that his eligibility for a mitigating role adjustment has been clarified by recent actions of the U.S. Sentencing Commission, in amending §3B1.2.

Since before 2002, when Amendment 640 was issued, amending U.S.S.G. §3B1.2, the Sentencing Commission has expressed concern that "the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders. . . . [The] base offense levels derived from the Drug Quantity Table in §2D1.1 overstate the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under §3B1.2." U.S.S.G. Amendment 640. For this reason, the Commission modified the Drug Quantity Table in §2D1.1 "to provide a maximum base offense level of level 30 if the defendant receives an adjustment under §3B1.2," commenting:

> The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level

4

trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability (e.g., "mules" or "couriers" whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment).

U.S.S.G. Amendment 640.

The Commission's concerns have clear significance for Mr. Ortiz-Rodriguez. As a hired hand aboard a small drug-smuggling vessel, his role was indisputably limited to that of a "mule" or "courier," with no authority in the drug trafficking organization and consequently a low degree of individual culpability.

**Current state of §3B1.2, amended on Nov. 1, 2015**

Since issuing Amendment 640 in 2002, the Commission has continued to be concerned about the under-application of the mitigating role adjustment. Recently, in a wide-ranging study of low-level offenders, the Commission concluded that the adjustment continues to be applied "inconsistently and *more sparingly than the Commission intended.*" U.S.S.G. Amendment 794 (emphasis supplied). Largely to encourage application of the adjustment to greater numbers of low-level offenders, the Commission issued Amendment 794, effective on November 1, 2015.

The most important change to the guideline under Amendment 794 was the addition of "a non-exhaustive list of factors for the court to consider in determining whether to apply a mitigating role adjustment and, if so, the amount of the

5

adjustment." U.S.S.G. Amendment 794.  All five of the listed factors have specific implications for Mr. Ortiz-Rodriguez:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. §3B1.2 App. N. 3(C).

**Factors (i) - (iv): understanding, planning, authority, discretion**

The criteria in factors (i) through (iv) focus on the defendant's understanding, planning/organizing function, decision-making authority, responsibility and discretion.  Mr. Ortiz-Rodriguez exercised none of these attributes.  He was simply one of three hired hands whose presence was necessary for the moving of a small vessel over a stretch of ocean.  Just one leg in many, the contraband would travel.  Obviously he possessed some understanding of the illegal purpose of the voyage, but it is unlikely that he knew any further details concerning the overall operation—such as the owner of the vessel or the ultimate

6

destination of the cocaine. He was recruited on the street, by low-level service-providers, who dealt with intermediaries within a larger drug trafficking organization. Mr. Ortiz-Rodriguez was not involved in acquiring drugs, organizing the drug smuggling operation, or planning the route of the voyage. He had zero decision-making authority, leadership responsibility, or operational discretion. Mr. Ortiz-Rodriguez's duties consisted mainly of checking the GPS others had programmed, filling fuel tanks from jerry-cans, taking his turn steering and as a lookout. In short, Mr. Ortiz-Rodriguez's role was "perform[ing] a limited function in the criminal activity." U.S.S.G. §3B1.2 App. N. 3(A). As the Application Note states, "[A] defendant who is convicted of a drug trafficking offense whose participation in that offense was limited to transporting or storing drugs . . . *may receive an adjustment under this guideline*." *Id.* (emphasis supplied).

### Factor (v): "benefit" from the crime

Further determinative of Mr. Ortiz-Rodriguez's minor role is factor (v) added to Application Note 3(C): "the degree to which the defendant stood to benefit from the criminal activity." Mr. Ortiz-Rodriguez was to receive only a small, one-time cash payment completely unrelated to the large value of the drugs transported. The promised sum seems to have been only a few thousand dollars, and it does not even appear that a partial payment was received in advance (the Coast Guard found very little cash among the defendants' possessions). At any

7

rate, a miniscule, non-proprietary "benefit" of this type clearly meets the guideline's requirement for a mitigating role adjustment. As the guideline states, "A defendant who is simply being paid to perform certain tasks *should be considered* for an adjustment under this guideline." U.S.S.G. §3B1.2 App. N. 3(C) (emphasis supplied).

### Conduct "integral" or "indispensable" to the offense

As noted by the Commission in issuing Amendment 794, defendants historically have been improperly denied mitigating role adjustments because their conduct was "integral" (essential, indispensable) to the offense. In Amendment 794, however, the Commission clarified beyond all doubt that the fact that a defendant's role was essential to the offense "does not alter the requirement . . . that the court must assess the defendant's culpability relative to the average participant in the offense." U.S.S.G. Amendment 794. "The fact that a defendant performs an essential or indispensable role in the criminal activity *is not determinative*. Such a defendant *may receive an adjustment under this guideline* if he or she is substantially less culpable than the average participant in the criminal activity." U.S.S.G. §3B1.2 App. N. 3(C) (emphasis supplied).

### Drug quantity as a basis for denial of adjustment

In the past, defendants serving as drug couriers were commonly denied mitigating role adjustments based on the amount of drugs being transported. This

analysis, however, was invalidated by Amendment 794, which states that a transporter of drugs—although accountable for the drugs he transported under relevant conduct—"*may receive*" a mitigating role adjustment. U.S.S.G. Amendment 794 (emphasis supplies). It is further instructive that in the list of factors courts are now directed consider, <u>not one of the five factors refers to drug quantity</u>. U.S.S.G. §3B1.2 App. N. 3(C) (emphasis supplied). Under the current guidelines, Mr. Ortiz-Rodriguez may not be denied a mitigating role adjustment on the grounds of drug quantity.

Should Mr. Ortiz-Rodriguez receive the requested 2-level adjustment for minor role, it should be noted that such an adjustment would also reduce his base level determination under U.S.S.G. §2D1.1. Specifically, §2D1.1 (a)(5) provides, "if the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level . . . is (i) 38, decrease by 4 levels; " Where a defendant's base offense level is determined pursuant to §2D1.1(a)(5), that level is additionally reduced based on the mitigating role, whether that be a 4-level minimal participant, and 2-level minor participant, or a 3-level intermediate participant reduction. *See* U.S.S.G. §3B1.2 App. N. 6.

### **Culpability compared to the "average participant"**

The fundamental requirement for the minor role adjustment is that, "based on the totality of the circumstances," the defendant's role in the offense "makes

him substantially less culpable than the average participant in the criminal activity." U.S.S.G. §3B1.2 App. N. 3(A). According to the Sentencing Commission's Historical Notes to the 2015 Amendments, "average participant" refers narrowly to the defendant's "co-participants in the case at hand." In a conspiracy involving the immediate presence of only three persons, the concept of "average participant" is elusive. Even in these narrow circumstances, however, it is clear that Mr. Ortiz-Rodriguez and the rest of the crew were "substantially less culpable" than other participants. He was not directly connected with the larger drug organization, did not plan or organize the voyage, did not procure the go-fast, did not load the cocaine, did not provision the vessel with supplies, and did not provide the GPS navigating device. In all such activities, Mr. Ortiz-Rodriguez had no say. His role was that of a temporary hand hired by higher-ups to perform a limited, short-term set of menial tasks in exchange for a small, one-time cash payment unrelated to the value of the drug cargo. Even in the narrow "case at hand," Mr. Ortiz-Rodriguez qualifies for the 2-level minor role adjustment.

In the spirit of justice, Mr. Ortiz-Rodriguez is even less culpable when considered under a *true* "totality of the circumstances," which included the higher-level drug-trafficking conspirators who were actually responsible for Mr. Ortiz-Rodriguez's presence aboard the Go Fast boat. The *true* "average participants" were those who created, organized, and managed an international drug-trafficking

organization; sourced and obtained hundreds of kilograms of cocaine at wholesale; paid for the construction of the specialized but disposable boat; arranged for the maritime transport of large quantities of cocaine to recipients in distant countries; and continue to reap huge profits from the overall enterprise oblivious of the fate of minor, disposable players such as Mr. Ortiz-Rodriguez.

In view of Mr. Ortiz-Rodriguez's minor and subordinate role in the conspiracy, and the intent and effect of the Sentencing Commission in issuing Amendments 640 and 794, it is clear that Mr. Ortiz-Rodriguez is entitled to a 2-level minor role reduction and a corresponding 4-level reduction in his base offense level pursuant to U.S.S.G. §2D1.1(a)(5). With these two adjustments, his properly calculated total offense level is 30. A total offense level 30 and criminal history category I, Mr. Ortiz-Rodriguez's advisory guideline imprisonment range is 97-121 months.

**Variance pursuant to *United States v. Booker and* 18 U.S.C. § 3553(a)**

Mr. Ortiz-Rodriguez's guideline range--without the mitigating role adjustment--is low end 168 months. The offense to which he has pleaded guilty carries a statutory minimum penalty of 10 years, but he is eligible for a lesser sentence by virtue of the U.S.S.G. §5K1.1 motion to be filed by the government. Under the advisory guidelines regime in place since *United States v. Booker*, 125 S. Ct. 738, 756 (2005), this Court is required to impose a sentence that is

*reasonable*—that is, sufficient but not greater than necessary to meet the statutory purposes of sentencing set forth in 18 U.S.C § 3553(a). Given the facts of this case, Mr. Ortiz-Rodriguez submits that a reasonable punishment would be a total term of incarceration not exceeding 97 months.

### **Application of 18 U.S.C. § 3553(a)**

Mr. Ortiz-Rodriguez regrets his commission of a serious federal crime and understands the need for punishment. He submits, however, that the nature and circumstances of his offense, and his personal history and characteristics, weigh in favor of a sentence significantly less than his low-end guidelines range of nearly 14 years in prison.

Mr. Ortiz-Rodriguez, whose desperation was such that he could not turn down a job that might require his being separated from his family, was shaped by circumstances that were manifestly *not* contemplated by the United States Sentencing Guidelines. Esmeraldes, the place of his residence and childhood, is one of the poorest towns in Ecuador. Located near the Pacific, the town is cut off from the main part of the country by the Andes Mountains, surrounded by jungle and accessible only by air and river transport. Historically the town was peaceful but now has been torn by armed conflict between right-wing paramilitaries, and it is still terrorized by freely operating narco-trafficking organizations. Add to this the threat of pirates stealing from and killing fishermen. The inhabitants live in

conditions of "violence, poverty, corruption and neglect." Within this setting, the vulnerable family of Mr. Ortiz-Rodriguez was among the most afflicted.

Mr. Ortiz-Rodriguez came to adulthood, and later raised his own family, in lawless barrios where competing criminal gangs routinely restrict residents' movements, recruit their children, extort their businesses, and routinely engage in horrific acts of violence against anyone who defies their will. Neither as a poor child growing up without a father or as an unskilled, near-illiterate adult supporting a family in a city with over 50 percent unemployment, has Mr. Ortiz-Rodriguez known the level of opportunity available to the poorest in the United States. That circumstance must bear on the degree of blameworthiness for which he is held personally responsible.

**The purposes of sentencing**

Section 3553(a)(2) sets forth the purposes of sentencing, which can be summarized as:

(1) just punishment;
(2) deterrence;
(3) protection of the public; and
(4) rehabilitation.

Mr. Ortiz-Rodriguez submits that each of these purposes would be achieved by a total sentence of 108 months.

**Just Punishment**

Mr. Ortiz-Rodriguez's conduct, participating in an attempt to smuggle illegal drugs, was a violation of law and must be justly punished—constituting appropriate retribution while promoting respect for the law and demonstrating to the offender and to others the reprehensibility of the offense. In this case, since Mr. Ortiz-Rodriguez has no history of violence, and no violence was involved in the offense, just punishment can be achieved with 108 months of incarceration. A sentence of 108 months will be particularly hard to bear in the case of an individual whose family members are outside the United States, and are unlikely to be able to visit him in prison.

**Deterrence – specific and general**

As for specific deterrence (i.e., specifically affecting Mr. Ortiz-Rodriguez), little statistical data is available regarding recidivism rates in cases like this, in which the offender is located outside the United States and is subject to personal and economic conditions that scarcely exist in this country. Added periods of incarceration beyond 108 months would be mere surplus age—taxpayer-funded punishment for its own sake that returns no social benefit.

As for general deterrence: By any standard, 108 months in federal prison followed by summary deportation to a third-world country will surely be seen as severe punishment for an offense that took place entirely outside the United States

and involved no weapons or violence.

### Protection of the Public

Other than, the general threat posed by the trade in illegal drugs, the safety and wellbeing of the public are not at stake here. Mr. Ortiz-Rodriguez has no history of violence or of crimes against persons. There is no other indication that he poses any danger to the public.

### Rehabilitation

Mr. Ortiz-Rodriguez, reflecting on the wrong that he has done wishes to move forward, complete his punishment, and return to his family. Given his need for vocational skills, it is particularly unfortunate that (as an undocumented alien) he will not qualify for prison rehabilitative programs such as job training. In effect, the time he spends in prison will be "pure punishment"—a further reason for limiting his sentence to 108 months and permitting him to return to his family and such gainful employment as is available.

### The kinds of sentences available (and related costs)

Since in this case only incarceration (followed by deportation) is available, the cost of this punishment is a relevant consideration. At the rate of $30,621 per year (PSR ¶78), any incarceration beyond that which is necessary represents an unjustified expenditure of public funds. Mr. Ortiz-Rodriguez submits that a total sentence of 108 months is sufficient to accomplish the goals of sentencing at a

justifiable cost.

## **CONCLUSION**

For the reasons stated herein, Mr. Ortiz-Rodriguez, respectfully urges this Court to impose a total sentence of 108 months. Such a sentence is reasonable in light of the advisory guideline range and the factors set forth at 18 U.S.C. § 3553(a).

DATED this 1st day of July, 2016.

>Respectfully submitted,
>
>DONNA LEE ELM
>FEDERAL DEFENDER
>
>***/s/ Frank W. Zaremba***
>Frank W. Zaremba
>Florida Bar No. 0277371
>Assistant Federal Defender
>400 N. Tampa Street, Suite 2700
>Tampa, Florida 33602
>Telephone: (813) 228-2715
>Fax: (813) 228-2562
>Email: Frank_Zaremba@fd.org

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of July, 2016, a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to the following:

Daniel Baeza, AUSA

*/s/ Frank W. Zaremba*
Frank W. Zaremba
Assistant Federal Defender